IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|  |  |  |
|---|---|---|
| HERBERT M. GROSE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 20-cv-02754-JTF-tmp |
| | ) | |
| AMERICAN AIRLINES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## REPORT AND RECOMMENDATION

Before the court is defendant American Airlines, Inc.'s Motion to Dismiss, filed on December 8, 2020.[1] (ECF No. 16.) *Pro se* plaintiff Herbert M. Grose responded to the motion on January 19, 2021. (ECF No. 21.) American Airlines, Inc. filed a reply in support of its motion on February 2, 2021. (ECF No. 22.) For the reasons below, it is recommended that the motion be granted in part and denied in part.

### I.   PROPOSED FINDINGS OF FACT

Plaintiff Herbert M. Grose, who is African-American, began working for American Airlines as a fleet service clerk in 1979. (ECF No. 13 at 3.) On September 13, 2018, he completed the required

---

[1]Pursuant to Administrative Order No. 2013-05, this case has been referred to the United States magistrate judge for management and for all pretrial matters for determination or report and recommendation, as appropriate.

tests to become eligible for a Crew Chief/D1 upgrade.[2] (ECF No. 13 at 3-4.) According to Grose, Paul Hammond, his primary training instructor, was responsible for confirming to American Airlines that he had completed all of the necessary tests to be included on the Crew Chief/D1 qualifying list. (ECF No. 13 at 4.) Jose Moux, a "Manning Manager," was then responsible for adding Grose's name to the list of employees eligible to fill crew chief vacancies. (ECF No. 13 at 4.)

According to Grose, he was granted crew chief access on October 3, 2018, and was assigned to be a crew chief on the Dallas to Los Angeles route from February 3 to 6, 2019. (ECF No. 13 at 4-5.) Other than the four-day period in early February 2019, Grose alleges that he was routinely denied crew chief status (and the corresponding overtime benefits) from September 13, 2018, until May 7, 2019.[3] (ECF No. 13 at 5.) In February 2019, he attempted to discuss his displeasure with how overtime opportunities were being distributed with Stewart Elias, an administrative manager, and Marcie Vanbrocklin, a training manager. (ECF No. 13 at 5.) According to Grose, Elias acknowledged that there may have been

---

[2]Based on the amended complaint, it appears that Grose served as a crew chief prior to passing these tests on several occasions. (ECF No. 13 at 3-4.)

[3]American Airlines distributes overtime opportunities in accordance with procedures established by a collective bargaining agreement ("CBA"). (ECF No. 16-2 at 13-23.)

some discrepancies and that the company would work to rectify the issue. (ECF No. 13 at 5.) Vanbrocklin, however, commented "if we pay him[,] we will have to pay all the others a bypass." (ECF No. 13 at 5.)

Grose filed his first internal grievance (#60765) with American Airlines on March 5, 2019. (ECF Nos. 13 at 5; 16-2 at 3-4.) According to the amended complaint, the grievance was based on an incident on March 2, 2019, where a manager for American Airlines contacted two white employees – Tommy Fagan and Joseph Lauglin – on their days off to cover as crew chiefs. (ECF No. 13 at 5-6.) Neither Fagan not Lauglin had signed up for overtime, though both had registered fewer hours of overtime than Grose. (ECF No. 13 at 6.) Grose, who had also not signed up for overtime, was not contacted to work the shift. (ECF No. 13 at 6.) The grievance was denied on March 18, 2019, because he had not signed up for overtime. (ECF No. 16-2 at 5.) Grose alleges that this was one example of many instances where he was denied overtime opportunities in favor of white employees like Fagan and Lauglin. (ECF No. 13 at 6.)

Grose filed a second grievance (#60853) on March 26, 2019, alleging that he was again bypassed for an overtime opportunity in favor of Fagan.[4] (ECF Nos. 13 at 6; 16-2 at 6-7.) American Airlines

---

[4]In the second grievance, Grose also complained that American Airlines's list of employees eligible for overtime included both

denied Grose's second grievance because "[t]here is a policy which allows [American Airlines] to seek a qualified person" for overtime and because Grose "had more hours than [the employees] awarded." (ECF No. 16-2 at 8.) He then filed a third grievance (#61245) on April 23, 2019, demanding that American Airlines perform a "thorough audit" of the company's overtime assignments from September 13, 2018, until April 23, 2019. (ECF Nos. 13 at 6; 16-2 at 9; 21 at 28.) This grievance does not appear to be based on any specific acts of misconduct, but rather American Airlines's practice of "calling employees in on day off overtime if [they] are a Qualified Crew Chief or D1, even if [they] don't sign up," which, according to Grose, violates several terms of the CBA. (ECF No. 16-2 at 9.)

On May 8, 2019, managers for American Airlines informed Grose that they were denying all of his grievances because, according to their records, he was allegedly not qualified to serve as a crew chief and, in any event, he had not expressed any desire to be considered for crew chief vacancies. (ECF Nos. 13 at 6; 16-2 at 10; 21 at 29.) After learning this, Grose reviewed his training records and learned that he had passed all of the necessary training modules but that his account was listed as "inactive." (ECF No. 13 at 6.) He reached out to Hammond, who confirmed that

---

crew chiefs and fleet service clerks, allegedly in violation of terms in the CBA. (ECF No. 16-2 at 7.)

he should have been listed as "active" and sent an email reiterating this confirmation to Moux that same day. (ECF No. 13 at 6-7; 21 at 37.) Since May 8, 2019, Grose states that he has regularly received opportunities for overtime. (ECF No. 13 at 7.)

Later in May of 2019, Grose spoke with a white colleague, Randy Shasta, who advised him that he had also filed a grievance with American Airlines for being bypassed on crew chief opportunities, but that he was awarded back pay for the missed opportunities. (ECF No. 13 at 7.) With this information in hand, Grose met with Cedric Rockamore, vice president of operations, to present his grievances and request back pay. (ECF No. 13 at 7.) According to the amended complaint, Rockamore represented to Grose that he would identify who was responsible for listing Grose as "inactive." (ECF No. 13 at 7-8.) While Grose was still in his office, Rockamore called Elias to inform him that Grose's disputes were not resolved, telling him "if we owe the man, pay the man." (ECF No. 13 at 8.) Rockamore then told Grose to go to Elias's office to discuss the matter, which he did immediately. (ECF No. 13 at 8.) Elias was not in his office when Grose arrived. (ECF No. 13 at 8.) Grose left his contact information with Elias's receptionist, but Elias never reached out to him. (ECF No. 13 at 8.)

Grose then met with Bryan Smith, director of operations for American Airlines, to discuss American Airlines's "failures

regarding fairness and race discrimination." (ECF No. 13 at 8.)
Grose alleges that Smith attempted to schedule a meeting with Mike
Bryant, a senior manager, but that Bryant refused to meet if Grose
was present. (ECF No. 13 at 8.) Next, Grose met with Kerry Palmer
from the Human Resources department and filed another internal
complaint, this time alleging that Vanbrocklin altered his
training records to list him as inactive. (ECF No. 13 at 8-9.)
When Palmer asked him why he thought this, he referenced
Vanbrocklin's comment about having to pay everybody who was
bypassed and noted that she had access to his training records.
(ECF No. 13 at 9.) Palmer never followed up with Grose after their
meeting. (ECF No. 13 at 9.) On May 27, 2019, Grose filed an
additional formal complaint via American Airlines's ethics
hotline. (ECF Nos. 13 at 9; 21 at 18-19.) When he did not hear
anything, he reached out to American Airlines's Chief Executive
Officer, Doug Parker, and Chief Operating Officer, Robert Isom.
(ECF Nos. 13 at 9; 21 at 20-21.) Neither responded.

On August 20, 2019, Grose filed a charge of discrimination
with the Equal Employment Opportunity Commission ("EEOC"), which
read:

> On or [about] 3/26/2019, I [filed] a grievance against
> my employer American Airlines for not paying my back pay
> for day off overtime D1/Crew Chief for 3/24/2019. On or
> about 4/23/2019, I [filed] a second grievance against
> American Airlines for not paying my back pay for D1/Crew
> Chief from dates 9/15/2018 to present. My back pay
> grievance was denied by Stewart Elias (Admin Manager)

> and Mike Bryant (Manager). Two of my white male
> colleagues [] received their D1/Crew Chief pay without
> having to file a grievance. . . . I believe I was
> discriminated against because of my race (black), in
> violation of Title VII of the Civil Rights Act of 1964,
> as amended.

(ECF Nos. 13 at 10; 16-2 at 11.) On the EEOC charge form, he only

checked the box for race discrimination. (ECF No. 16-2 at 11.)

Grose received a right to sue letter from the EEOC on July 14,

2020. (ECF No. 1-2.) He filed the instant lawsuit against American

Airlines on October 5, 2020, alleging several Title VII claims,

including discrimination on the basis of race and sex, retaliation,

and a hostile work environment. (ECF No. 1 at 1.) He filed an

amended complaint on November 23, 2020, this time listing only two

causes of action: race discrimination and retaliation in violation

of Title VII of the Civil Rights Act.[5] (ECF No. 13.)

## II.   PROPOSED CONCLUSIONS OF LAW

### A.   Standard of Review

In deciding a Rule 12(b)(6) motion to dismiss for failure to

state a claim upon which relief can be granted, the court views

the plaintiff's allegations in the light most favorable to him and

accepts all well-pleaded factual allegations as true. Ashcroft v.

---

[5]While the amended complaint only alleges race discrimination and
retaliation in its causes of action, the introductory paragraph
alludes to sex discrimination. (ECF No. 13 at 1, 11-12.) Grose
also appears to raise three additional claims in his response to
the motion to dismiss, alleging that American Airlines violated
Articles 6, 12, and 18 of the CBA. (ECF No. 21 at 14-15.)

Iqbal, 556 U.S. 662, 678–79 (2009). Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2). However, "[t]he factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." Fritz v. Charter Twp. Of Comstock, 592 F.3d 718, 722 (6th Cir. 2010) (quoting Iqbal, 556 U.S. at 677). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007)). To satisfy this requirement, plaintiffs must plead more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." Id. (alteration omitted) (quoting Twombly, 550 U.S. at 555, 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

As a general rule, a district court may not consider matters outside the pleadings when ruling on a Rule 12(b)(6) motion to dismiss without converting the motion into one for summary judgment. Gavitt v. Born, 835 F.3d 623, 640 (6th Cir. 2016); see

Fed. R. Civ. P. 12(d). However, "when a document is referred to in the complaint and is central to the plaintiff's claim," a defendant "may submit an authentic copy [of the document] to the court to be considered on a motion to dismiss, and the court's consideration of the document does not require conversion of the motion to one for summary judgment." Greenberg v. Life Ins. Co. of Va., 177 F.3d 507, 514 (6th Cir. 1999) (quotation omitted). This can include "exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss." Gavitt, 835 F.3d at 640. Here, American Airlines attached copies of three internal grievances filed by Grose, a copy of Grose's charge of discrimination with the EEOC, and excerpts from the applicable CBA to its motion to dismiss. (ECF No. 16-2.) Though none of these documents are attached to either the initial or amended complaint, Grose directly refers to each one in his amended complaint and they are central to his claims. (ECF No. 13.) As such, the undersigned may consider American Airlines's attached documents without converting the motion into one for summary judgment. See Weiner v. Klais & Co., Inc., 108 F.3d 86, 89 (6th Cir. 1997) (where the plaintiff does not refer directly to given documents in the pleadings, if those documents govern the plaintiff's rights and are necessarily incorporated by reference, then the motion need not be converted to one for summary judgment); see also Hudson v. Genesee

<u>Intermediate Sch. Dist.</u>, No. 13–12050, 2013 WL 6163220, at *1 n.1 (E.D. Mich. Nov. 25, 2013) (finding that plaintiff's right to sue letter, although not attached to the complaint but instead attached as an exhibit to defendant's motion to dismiss, was central to plaintiff's claim and therefore court did not convert defendant's motion to dismiss into a motion for summary judgment).

Similarly, Grose attached several exhibits to his response that were not attached to his amended complaint. These exhibits include (1) his ethics complaint on May 27, 2019, (2) his email to Isom and Parker on July 13, 2019, (3) a document purporting to show that he was eligible to be a crew chief on September 13, 2018, (4) a document purporting to show that Grose was granted access to the AutoNOTOC[6] application on October 3, 2018, (5) documents purporting to show that he served as a crew chief on flights in early February 2019, (6) a document purporting to show the disposition of grievance #61245, (7) documents purporting to show that his crew chief status was listed as inactive even though he had completed the necessary training modules, (8) an email from Hammond to Moux confirming that Grose had completed his crew chief training, and (9) documents purporting to show that American Airlines has granted several grievances filed since October 2020.

---

[6]According to Grose, the AutoNOTOC application allows a crew chief to enter dangerous goods information to the captain. (ECF No. 13 at 4-5.)

(ECF No. 21 at 17-43.) Of these documents, only the ethics complaint, Grose's email to Isom and Parker, the disposition of grievance #61245,[7] and Hammond's email to Moux are mentioned in the amended complaint. (ECF no. 21 at 18-21, 28, 37.) Because these documents are each referred to in the amended complaint and are central to his claims, the court may consider them in ruling on American Airlines's motion to dismiss. See Geinosky v. City of Chicago, 675 F.3d 743, 745 n.1 (7th Cir. 2012) ("[A] party opposing a Rule 12(b)(6) motion may submit materials outside the pleadings to illustrate the facts the party expects to be able to prove"). As for the remaining exhibits, none are directly referenced in the amended complaint and, in any event, they are not integral to Grose's amended complaint. See Gregory v. CitiMortgage, Inc., 890 F. Supp. 2d 791, 796 (E.D. Mich. 2012) ("[B]ecause the affidavit is neither referenced to in the pleadings nor integral to the plaintiff's claims, the Court will not consider this affidavit in deciding the defendants' motion to dismiss."). Thus, the undersigned submits that the court need not consider them at this juncture.

"Pro se complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." Williams v. Curtin, 631 F.3d 380, 383 (6th

---

[7]This document was provided to the court by both Grose and American Airlines.

Cir. 2011) (internal quotation marks omitted). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989); see also Brown v. Matauszak, 415 F. App'x 608, 613 (6th Cir. 2011) ("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading.") (internal quotation marks omitted); cf. Pliler v. Ford, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); Young Bok Song v. Gipson, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

## B.   RLA Preclusion

American Airlines first argues that this court lacks subject matter jurisdiction over the present dispute because it involves interpreting American Airlines's CBA. American Airlines's basis for arguing lack of subject matter jurisdiction is the Railway Labor Act ("RLA"), which establishes "a comprehensive framework for resolving labor disputes." 45 U.S.C. § 151a; Hawaiian Airlines,

Inc. v. Norris, 512 U.S. 246, 248, 252 (1994) (citation omitted).
With some exceptions, the RLA's "mandatory arbitral mechanism" is
vested with exclusive jurisdiction over major and minor disputes
arising out of collective bargaining agreements "covering rates of
pay, rules, or working conditions."[8] 45 U.S.C. § 151a; Emswiler
v. CSX Transp., Inc., 691 F.3d 782, 785, 790 (6th Cir. 2012)
(quoting Norris, 512 U.S. at 252). Contrary to American Airlines's
position, the Sixth Circuit has held that "completion of the RLA-
mandated arbitral process does not affect a district court's
subject matter jurisdiction over a claim but instead goes to the
court's ability to reach the merits of a dispute and grant relief."
Emswiler, 691 F.3d at 790 (citing Arbaugh v. Y & H Corp., 546 U.S.
500 (2006)). However, because the RLA still precludes federal
review if a plaintiff's "failure to pursue RLA arbitration cannot
be excused," the undersigned will instead construe American
Airlines's argument as a motion to dismiss for failure to exhaust
the RLA's procedures.

---

[8]The three most common exceptions to the RLA's mandated arbitration
process for CBA disputes are: "(1) where the union 'has the sole
power under the contract to invoke the upper level grievance
procedures and yet prevents an employee from exhausting
contractual remedies by wrongfully refusing to process the
employee's grievance in violation of its duty of fair
representation;' (2) 'when the employer's conduct amounts to a
repudiation of the remedial procedures specified in the contract;'
and (3) when resort to the administrative procedures would be
wholly futile." Emswiler, 691 F.3d at 790 (quoting Atkins v.
Louisville & Nashville R.R. Co., 819 F.2d 644, 649-50 (6th Cir.
1987)).

A major dispute "relate[s] to the formation of collective bargaining agreements or efforts to secure them." Norris, 512 U.S. at 252 (citation and internal quotation omitted). A minor dispute, on the other hand, "grow[s] out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions" and "involve[s] controversies over the meaning of an existing collective bargaining agreement in a particular fact situation." Id. at 253 (quoting 45 U.S.C. § 151a and Trainmen v. Chicago R. & I.R. Co., 353 U.S. 30, 33 (1957)). The defining characteristic of a minor dispute is that it can be "conclusively resolved by interpreting" a collective bargaining agreement. Smith v. Nw. Airlines, Inc., 141 F. Supp. 2d 936, 940 (W.D. Tenn. 2001) (citing Norris, 512 U.S. at 256). In contrast, "when a cause of action ultimately concerns an issue unrelated to the CBA, then the RLA does not pre-empt the plaintiff's statutory claim." Id. at 942. As such, the undersigned must first determine whether Grose's Title VII claims can be resolved without depending on an interpretation of the CBA.

The Sixth Circuit has established a two-part test for determining if a claim is sufficiently independent from a collective bargaining agreement dispute. Stanley v. ExpressJet Airlines, Inc., 356 F. Supp. 3d 667, 684-85 (E.D. Mich. 2018) (citing Emswiler, 691 F.3d at 792). First, the court must ask if the plaintiff's claim requires an interpretation of the collective

- 14 -

bargaining agreement. Id. If yes, then the court must ask if the
right claimed by the plaintiff was established by the agreement or
if it exists independently under state or federal law. Id.
Typically, "[i]f the 'claim is not a purely factual question about
. . . an employer's conduct and motives and cannot be decided
without interpretation of the CBA,' it is preempted." Id. (quoting
Emswiler, 691 F.3d at 793.) That said, a claim must depend on an
interpretation of the collective bargaining agreement in order to
be preempted. Smith, 141 F. Supp. 2d at 941 (citing Lingle v. Norge
Div. of Magic Chef, Inc., 486 U.S. 399, 407-08 (1988)). As the
Seventh Circuit has articulated:

> the fact that a collective bargaining agreement might be
> consulted in resolving a plaintiff's claims is
> insufficient to trigger RLA preclusion. Claims are not
> precluded just "because certain provisions of the CBA
> must be examined and weighed as a relevant but non-
> dispositive factor in deciding a claim or a defense."

Carlson v. CSX Transp., Inc., 758 F.3d 819, 833 (7th Cir. 2014)
(quoting Brown v. Ill. Cent. R.R. Co., 254 F.3d 654, 668 (7th Cir.
2001)). As such, Grose's Title VII complaints are not precluded
solely because of the existence of the CBA. See Jones v. Roadway
Exp., Inc., 931 F.2d 1086, 1090 (5th Cir. 1991) ("[W]e do not
require that the CBA be irrelevant to the dispute; either party
may still use the CBA to support the credibility of its claims.").

In the instant case, none of Grose's Title VII claims can be
classified as "minor" disputes under the CBA. While standards and

procedures established by the CBA may be relevant to analyzing whether American Airlines discriminated against Grose in how it assigned overtime hours and distributed back pay, Grose's primary assertion is that white employees were offered overtime opportunities while he was passed over and that white employees were granted back pay while he was not. These are allegations "that [American Airlines] violated rights created by federal statute — i.e., a right to be free from discrimination under Title VII — not by the CBA." Yelder v. Norfolk S. Ry. Co., 2:18-CV-10576-TGB, 2020 WL 1083785, at *8 (E.D. Mich. Mar. 6, 2020) (holding that a Title VII race discrimination claim is not preempted by the RLA where the claim turns on an employer's "conduct and motives in relation to the CBA's requirements"); see Roache v. Long Island R.R., 18-cv-6443 (ENV) (JO), 2020 WL 5594640, at *7 (E.D.N.Y. Sept. 17, 2020) (holding that the RLA did not preclude a federal court from reviewing Title VII claims where the plaintiffs alleged that the defendant interpreted a collective bargaining agreement "differently and adversely when dealing with him" because of his race); Nguyen v. United Air Lines, Inc., No. 1:09-cv-733, 2010 WL 2901878, at *4 (W.D. Mich. July 23, 2010) (holding that a plaintiff's claims were not precluded by the RLA despite requiring a discussion of the CBA because "the elements of his claims do not require the court to interpret the CBA"). Because "a Title VII discrimination claim exists independently of any particular

employment contract," the undersigned submits that the court is not precluded from reaching the merits of Grose's Title VII claims.[9] Smith, 141 F. Supp. 2d at 944.

## C.    **Title VII Race Discrimination**

"Title VII makes it unlawful for an employer to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." Singfield v. Akron Metro. Hous. Auth., 389 F. 3d 555, 561 (6th Cir. 2004) (internal citation and quotation omitted). As a preliminary matter, because this is a motion to dismiss, the

---

[9]The undersigned notes that Grose raised several claims against American Airlines for the first time in his response to the motion to dismiss. In particular, Grose's response raised allegations that American Airlines violated several provisions in the CBA. (ECF No. 21 at 14-15.) In order for the court to consider these claims, the court would have to construe his response as a second amended complaint. Bates v. Green Farms Condo Ass'n, 958 F.3d 470, 483-84 (6th Cir. 2020) ("Plaintiffs cannot . . . amend their complaint in an opposition brief or ask the court to consider new allegations (or evidence) not contained in the complaint."). A court may only allow a second amended complaint if it is not futile – that is if it can survive a Rule 12 motion to dismiss. See Fed. R. Civ. P. 15(a)(2) (after a party amends a pleading once, "a party may amend its pleading only with the opposing party's written consent or the court's leave"); Rose v. Hartford Underwriters Ins. Co., 203 F.3d 417, 420 (6th Cir. 2000) (citing Thiokol Corp. v. Dep't of Treasury, 987 F.2d 376, 382-83 (6th Cir. 1993)). Unlike Grose's Title VII claims in the amended complaint, determining whether American Airlines violated the overtime provisions in its CBA would depend entirely on an interpretation of the CBA, making these new claims "minor dispute[s]" under the RLA. See Emswiler, 691 F.3d at 792-93. Thus, even if the court were to entertain these claims, the RLA would preclude federal review and, as a result, the new claims would be futile.

- 17 -

McDonnell Douglas burden-shifting framework does not apply. Payne
v. Lucite Int'l, No. 13-2948, 2014 WL 2826343, at *5 (W.D. Tenn.
May 20, 2014) (Pham, M.J.), adopted by, 2014 WL 2826343, at *1-3
(W.D. Tenn. June 23, 2014) (Anderson, J.); see also Keys v. Humana,
Inc., 684 F.3d 605, 609 (6th Cir. 2012) (citing Swierkiewicz v.
Sorema, 534 U.S. 506, 510 (2002)).

Instead, Grose's amended complaint will survive a motion to
dismiss if it can satisfy the general pleading standards under
Federal Rule of Civil Procedure 8(a)(2). See Serrano v. Cintas
Corp., 699 F.3d 884, 897 (6th Cir. 2012). Consequently, the
complaint must "'allege sufficient factual content from which a
court, informed by its judicial experience and common sense, could
draw the reasonable inference,' that Defendant discriminated
against Plaintiff with respect to an adverse employment event."
Burse v. Nashville Cmty. Care at Bordeaux, No. 3:17-cv-1117, 2018
WL 2560400, at *5 (M.D. Tenn. June 4, 2018) (Brown, M.J.), adopted
by, 2018 WL 3157019 (M.D. Tenn. June 28, 2018) (Campbell, J.)
(quoting Keys, 684 F.3d at 610). "This standard does not require
detailed factual allegations, but a complaint containing a
statement of facts that merely creates a *suspicion* of a legally
cognizable right of action is insufficient." El-Hallani v.
Huntington Nat. Bank, 623 F. App'x 730, 735 (6th Cir. 2015)
(quoting HDC, LLC v. City of Ann Arbor, 675 F.3d 608, 614 (6th
Cir. 2012) (emphasis in original)). The *prima facie* elements to a

- 18 -

claim for Title VII discrimination are "(1) [plaintiff] is a member of a protected group; (2) [plaintiff] was subjected to an adverse employment decision; (3) [plaintiff] was qualified for the position; and (4) [plaintiff] was replaced by a person outside the protected class, or a similarly situated non-protected employee was treated more favorably.'"[10] Evans v. Walgreen Co., 813 F. Supp. 2d 897, 921 (W.D. Tenn. 2011) (quoting Corell v. CSX Transp., Inc., 378 F. App'x 496, 501 (6th Cir. 2010)).

Grose's amended complaint lays out sufficient facts for the court to infer that he was discriminated against on the basis of race in two ways: that he was denied overtime opportunities and that he was denied back pay for when he was incorrectly listed as an inactive crew chief. For purposes of this motion, it is undisputed that Grose, an African-American, is a member of a protected class and that he was qualified for the position. The remaining elements present closer questions.

1.    Denied Overtime Opportunities

---

[10] While a Title VII plaintiff need not establish a *prima facie* case at the motion to dismiss stage, courts often look to the *prima facie* elements when determining whether a Title VII plaintiff has a cognizable claim. See, e.g., Towns v. Memphis/Shelby Cty. Health Dep't, No. 17-cv-02626-SHM-tmp, 2019 WL 639050, at *4 (W.D. Tenn. Jan. 25, 2019); McMahan v. Flour Int'l, No. 3:17-cv-1262, 2018 WL 4491133, at *3 n.3 (M.D. Tenn. Sept. 19, 2018); Thomas v. Aaron's Inc., No. 1:18-cv-441, 2018 WL 3386446, at *2-3 (W.D. Mich. July 12, 2018).

Grose's amended complaint alleges that he was denied opportunities for overtime on several occasions. "A 'mere inconvenience or an alteration of job responsibilities' or a 'bruised ego' is not enough to constitute an adverse employment action." Id. at 797 (quoting Kocsis v. Multi-Care Mgmt., Inc., 97 F.3d 876, 886 (6th Cir. 1996)). Rather, "a plaintiff claiming employment discrimination must show that she has suffered 'a materially adverse change in the terms of her employment.'" Id. (quoting Kocsis, 97 F.3d at 886); see also Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998) ("A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.").

Several courts, including the Sixth Circuit, have held that being deprived overtime opportunities can be an adverse employment action "when the overtime opportunities lost were both relatively regular in their occurrence and significant in the monetary impact." Shaw v. Donahoe, No. 11-2859-STA-tmp, 2014 WL 1168572, at *15 (W.D. Tenn. Mar. 21, 2014) (citing Gates-Lacy v. Cleveland Dep't of Pub. Safety, No. 1:09CV2593, 2011 WL 4368921, at *6 (N.D. Ohio Sept. 19, 2011)); see also Ray v. Int'l Paper Co., 909 F.3d 661, 670 (4th Cir. 2018) (citing Ellerth, 524 U.S. at 761); Garmon v. Nat'l R.R. Passenger Corp., 844 F.3d 307, 314 (1st Cir. 2016);

Broska v. Henderson, 70 F. App'x 262, 268 (6th Cir. 2003)
("[A]llegations of a denial of overtime, properly supported, could
constitute an adverse employment action."). Recognizing this,
American Airlines argues that Grose's claims for lost overtime
opportunities cannot be an adverse employment decision because
they are de minimis. See Coburn v. Cargill, Inc., No. 09-2844-JPM-
dkv, 2012 WL 6607287, at *15 (W.D. Tenn. Dec. 18, 2012) ("[A]n
extremely small monetary loss that is not reimbursed is not
sufficient to dissuade a reasonable worker from making or
supporting a charge of discrimination."); see also Lentz v. City
of Cleveland, 333 F. App'x 42, 57-58 (6th Cir. 2009) (Clay, J.,
dissenting) ("[T]his Court has never established a binding
precedent that the loss of overtime pay requires a finding of an
adverse employment action." (citing Broska, 70 F. App'x at 267-
68) (emphasis in original)).

    While Grose only describes in detail two specific instances
where he was denied overtime opportunities, his amended complaint
states that, regarding the March 2, 2019 incident, "[t]his was one
example of numerous times I was denied overtime because of
Defendant's discrimination on account of my race." (ECF No. 13 at
6.) Although sparse, at the motion to dismiss stage, the
undersigned submits that the amended complaint is sufficient to
allege that Grose's missed overtime opportunities constitute
adverse employment actions. See Figuero v. U.S. Postal Serv., 422

- 21 -

F. Supp. 2d 866, 883 (N.D. Ohio 2006) ("Plaintiff has alleged that
she was denied economic and overtime opportunities due to her age.
The law is clear that management decisions which inflict direct
economic harm meet the standard of an adverse employment action."
(internal citations omitted)); Phongsavane v. Potter, No.
CIVASA05CA0219-XR, 2005 WL 1514091, at *3 (W.D. Tex. June 24, 2005)
(denying a motion to dismiss because "an allegation of the denial
of overtime opportunities is sufficient to show an ultimate
employment decision and therefore an adverse employment action.").

As for whether Grose has sufficiently pleaded any similarly
situated employees, the undersigned likewise submits that he has
alleged enough facts to survive a motion to dismiss. To show that
another employee is "similarly situated," a plaintiff need not
demonstrate an "exact correlation," but instead must demonstrate
that he and the other employee are similar in "all of the relevant
aspects." Laws v. HealthSouth N. Ky. Rehabilitation Hosp. Ltd.
P'ship, 508 F. App'x 404, 411 (6th Cir. 2012) (citing Ercegovich
v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir. 1998))
(internal quotation marks and emphasis omitted). In his amended
complaint, Grose names two white employees (Fagan and Lauglin),
both of whom share his qualifications, did not sign up for
overtime, and were regularly awarded overtime opportunities that
he was denied. See Smith v. Wrigley Mfg. Co., 749 F. App'x 446,
448 (6th Cir. 2018) (a plaintiff must provide "specifics regarding

the other employees or their differing treatment" such as "names,
ages, or qualifications for the [similar] employees who were
treated differently, or any examples of how their treatment
differed" in order to survive a motion to dismiss) (citations
omitted); Keys, 684 F.3d at 610 (holding that a plaintiff pleaded
more than naked assertions of discriminatory conduct where he
alleged "several specific events" of discrimination, "identifie[d]
the key supervisors and other relevant persons by race and either
name or company title," and alleged specific adverse employments
action). This is sufficient to survive a motion to dismiss. Johnson
v. Long Island Univ., 58 F. Supp. 3d 211, 224 (E.D.N.Y. 2014)
("Although the Complaint is sparse on specifics with respect to
how his colleagues are similarly situated to him, the Court finds
that Plaintiff has stated a plausible inference of discrimination
based on disparate treatment with respect to the claims that [the
defendant] treated him differently by denying him the opportunity
to earn additional compensation and by assigning him significantly
more work than his fellow hall directors, but just barely.").

### 2.   Denied Backpay and Crew Chief Promotion

Grose's amended complaint also alludes to a second instance
of discrimination: that he was denied bypass pay for the period
when he was incorrectly listed as inactive. See White v. Baxter
Healthcare Corp., 533 F.3d 381, 402 (6th Cir. 2008) (listing
failure to promote as an adverse employment action) (citing

- 23 -

Ellerth, 524 U.S. at 761). Sixth Circuit precedent is clear that being denied a pay increase to which one is entitled constitutes an adverse employment action. See White v. Baxter Healthcare Corp., 533 F.3d 381, 403 (6th Cir. 2008) (collecting cases establishing that "a deprivation of increased compensation does constitute an adverse employment action"). As such, Grose's allegation that he was denied back pay for the period when he was erroneously listed as inactive satisfies the adverse employment action requirement.

As for a similarly situated employee, Grose alleged in his amended complaint that Randy Shasta, a white employee, was granted back pay after filing a grievance for being passed over as crew chief.[11] See Johnson v. Scotts Co., No. 2:11-CV-0020, 2011 WL 6415521, at *3 (S.D. Ohio Dec. 21, 2011) ("[E]vidence of similarly-situated, non-protected employees receiving better treatment, or evidence that the plaintiff was replaced by an individual outside the protected class is essential, and thus material, to prove race discrimination and obtain recovery under Title VII."). While Grose does not provide many facts describing Shasta, a plaintiff "'does not need detailed factual allegations' regarding . . . [defendant's] treatment of similarly-situated employees." Id. (quoting Twombly, 550 U.S. at 555). It is sufficient that the

---

[11]In his response to the motion, Grose named another white employee who was granted bypass pay for overtime opportunities that were not offered to her: Pam Wright. (ECF No. 21 at 12.)

amended complaint provides enough facts for the court to infer
that every element of a *prima facie* claim for discrimination is
met. See Serrano, 699 F.3d at 897 ("[S]o long as a complaint
provides an adequate factual basis for a Title VII discrimination
claim, it satisfies the pleading requirements of Federal Rule of
Civil Procedure 8(a)(2).") Here, the amended complaint states that
"coworker Randy Shasta (White) . . . was also bypassed as a Crew
Chief, but after filing [a] grievance, [he] received all due
backpay." (ECF No. 13 at 7.) This is more than a naked assertion
that an unnamed coworker was treated differently and is sufficient
(albeit not by much) at the motion to dismiss stage to establish
a similarly situated, non-protected employee. see Smith, 749 F.
App'x at 448. As such, "it is . . . plausible (beyond a wing and
a prayer)" that Shasta is a similarly situated employee, and thus
the undersigned recommends that his Title VII race discrimination
claim survive a motion to dismiss. Doe v. Baum, 903 F.3d 575, 581
(6th Cir. 2018).

**D.  Remaining Title VII Claims**

Additionally, Grose's amended complaint alleges sex
discrimination and retaliation claims and his initial complaint
alleges a hostile work environment claim. American Airlines argues
that these claims must be dismissed because Grose did not include
them in his EEOC charge.

Generally, a Title VII plaintiff cannot bring a claim in a lawsuit that was not included in a previous EEOC charge. See 42 U.S.C. § 2000e-5(f)(1); Russ v. Memphis Light, Gas & Water Div., 720 F. App'x. 229, 236 (6th Cir. 2017); Younis v. Pinnacle Airlines, Inc., 610 F.3d 359, 362 (6th Cir. 2010) (citing Alexander v. Gardner-Denver Co., 415 U.S. 36, 47 (1974)). Even so, *pro se* complaints are construed liberally, and courts may consider claims that are reasonably related to or grow out of the factual allegations in the EEOC charge. Younis, 610 F.3d at 362; see also EEOC v. R.G. & G.R. Harris Funeral Homes, Inc., 884 F.3d 560, 599 (6th Cir. 2018). Thus, "'whe[n] facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim.'" Younis, 610 F.3d at 362 (quoting Davis v. Sodexho, 157 F.3d 460, 463 (6th Cir. 1998)). In his narrative description on the EEOC charge, Grose contends that he was discriminated against in favor of two "white male colleagues" and that he "was discriminated against because of [his] race (black)." (ECF No. 16-2 at 11.) Even liberally construed, this EEOC charge does not allege that he was discriminated against because of his sex. Because Grose did not include a claim of sex discrimination in his EEOC charge, and because such claim is neither reasonably related to (nor expected to grow out of) his EEOC charge, he has failed to exhaust his administrative remedies with respect to that claim.

Similarly, neither a retaliation claim nor a hostile work
environment claim can be inferred from his EEOC charge. See Younis,
610 F.3d at 362 (holding that a plaintiff failed to exhaust his
administrative remedies where he checked the boxes on his EEOC
charge for discrimination but not for retaliation). While the
narrative section of his charge shows that he filed at least two
internal grievances, it does not allege any adverse actions that
were taken in response to his filing of those grievances. Cf.
Garcimonde-Fisher v. Area203 Mktg., LLC, 105 F. Supp. 3d 825, 835-
36 (E.D. Tenn. 2015) ("Because facts related to the charged claim
did in fact result in the EEOC investigating the retaliation claim,
neither Plaintiff is precluded from bringing their retaliation
claim."). Likewise, nothing in his EEOC charge would suggest to
the EEOC to investigate a hostile work environment claim, as his
charge alleged discrete acts of discrimination.[12] See Jones v. City
of Franklin, 309 F. App'x 938, 943-44 (6th Cir. 2009) ("No decision

---

[12]In any event, Grose's hostile work environment claim must fail
because it was omitted from the amended complaint. See B & H Med.,
LLC v. ABP Admin., Ind., 526 F.3d 257, 267 n.8 (6th Cir. 2008)
(because an amended complaint renders all early complaints as
nullities, a party may not rely on a theory that was dropped in an
amended complaint) (citing Drake v. City of Detroit, No. 06-1817,
2008 WL 482283, at *2 (6th Cir. Feb. 21, 2008)); Parry v. Mohawk
Motors of Mich., Inc., 236 F.3d 299, 306 (6th Cir. 2000) ("[W]hen
plaintiff files [an] amended complaint, [the] new complaint
supersedes all previous complaints and controls [the] case from
that point forward." (citing In re Atlas Van Lines, Inc., 209 F.3d
1064, 1067 (8th Cir. 2000)). For this reason, the undersigned
submits that Grose has abandoned his hostile work environment claim
and that it must be dismissed.

in this circuit has held that EEOC charges regarding discrete acts of discrimination are alone sufficient to put the EEOC on notice of a hostile-work-environment claim."); Scott v. Eastman Chem. Co., 275 F. App'x 466, 475 (6th Cir. 2008) ("[The plaintiff] failed to exhaust her hostile environment claim, as she offered no evidence that the EEOC actually investigated this claim or that such claims could reasonably be expected to grow out of the charge."). Accordingly, Grose's claims that were not included in his EEOC charge must be dismissed.

### III. RECOMMENDATION

For the reasons above, the undersigned recommends that American Airlines's Motion to Dismiss be denied as to the Title VII claim for race discrimination. It is recommended that the motion be granted with respect to the remaining claims in the amended complaint.

Respectfully submitted,


s/ Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

March 5, 2021
Date


### NOTICE

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A**

COPY. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2). FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.